IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 3, 2017

## STATE OF TENNESSEE v. ANDREW SHEARIN

**Appeal from the Criminal Court for Shelby County**
**No. 14-02047          Lee V. Coffee, Judge**

_____

### No. W2016-02228-CCA-R3-CD

_____

The Defendant, Andrew Shearin, pled guilty in the Shelby County Criminal Court to sexual exploitation of a minor involving more than 100 images, a Class B felony, and was sentenced by the trial court as a Range I, standard offender to twelve years at 100% in the Department of Correction. On appeal, he argues that the trial court imposed an excessive sentence by misapplying enhancement factors. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Joseph A. McClusky (on appeal) and Jack Sherman (at sentencing), Memphis, Tennessee, for the appellant, Andrew Shearin.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Bryce Phillips and Steve Ragland, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On April 24, 2014, the Defendant was indicted by the Shelby County Grand Jury for sexual exploitation of a minor based on his possession of over 100 images involving minors engaged in sexual activity, a Class B felony. On April 4, 2016, the Defendant entered an open guilty plea to the indicted offense, leaving the sentencing to the trial

court's determination. A transcript of the guilty plea hearing is not included in the record on appeal. According to the affidavit of complaint, the case stemmed from a July 19, 2011, execution of a search warrant at the Defendant's Memphis home, during which police officers discovered two computers containing over 100 images of minors engaged in sexual activity. The Defendant subsequently gave a signed statement admitting that he had downloaded and possessed the images found on his computers.

At the September 30, 2016, sentencing hearing, the State introduced the Defendant's presentence report, which reflected that the forty-three-year-old Defendant admitted prior use of marijuana and cocaine, including daily cocaine use from the age of 29 or 30 to 31 or 32.

The State's only witness at the hearing was Lieutenant Wilton Cleveland of the Memphis Police Department's Internet Crimes Against Children Unit, who conducted the forensic examination of the computers seized from the Defendant's home. Lieutenant Cleveland testified that he identified a total of 1,717 "child pornographic images" on the computers, with 1,488 of the images matching "hash values" of known pornographic images contained in multiple databases, and the remainder being new, previously unknown images. He said most of the images were of prepubescent children. In addition to the 1,717 images, Lieutenant Cleveland found thirty-nine videos, with "thirty-five of those ha[ving] the hash match values of known [child pornographic] . . . videos." The total run time of all the videos combined was six hours, forty-five minutes and twenty seconds.

Lieutenant Cleveland testified that he had worked in the Internet Crimes Against Children Unit for close to a decade and that several of the videos in this case were "probably the worst that [he had] ever seen." As an example, he testified that one of the videos, which "appear[ed] to be a compilation of a multiple timeframe," showed a man having penile-vaginal intercourse with a child from the time she was approximately nine to ten months old until she was three years old. Although the same victim appeared throughout that video, there were "[h]undreds, if not thousands" of child victims shown during all the hours of videotape and the 1,717 still images.

Lieutenant Cleveland testified that the Defendant admitted that he had downloaded the material. He recalled that the Defendant said he had been doing it for years and that he had used a neighbor's Wi-Fi connection to do so. On cross-examination, Lieutenant Cleveland testified that most child pornographic images "are freely shared across [child pornography] networks."

The Defendant testified that his arrest in the instant case was the first time he had ever been arrested. He said he grew up in South Carolina, graduated in 1995 from

Coastal Carolina College, married immediately after graduation, and divorced seven years later after his wife became pregnant with another man's child. In 2009, he moved to Memphis to work as the manager of a pizza store. He was in a brief relationship with a woman who had a two-year-old son, and both his girlfriend and her son lived with him in his Memphis apartment for approximately three months before they moved out in November 2010.

The Defendant acknowledged that he had "downloaded copious amounts of . . . child exploitative videos and pictures" and said that he had become "addicted to it." He could not remember why he began doing it, other than that he "was just going through a lot . . . [of] emotional turmoil [and] . . . depression." He stated he had attended ten counseling sessions since his arrest, during which he had learned that he had been "suffering from long-term depression" and "social anxiety." He explained his attraction to child pornography: "It was just . . . an emotional release, a sexual release. It was the only time I felt good. And even though I knew it might make someone else feel bad, I justified it that I wasn't really hurting anybody. I wound up hurting everybody, I think."

The Defendant estimated that he looked at child pornography for approximately half an hour each night and said that he masturbated while doing so. He stated he never paid for the material or communicated with anyone else about it. He knew it was against the law, and he initially took steps to avoid being caught, "but after a while, [he] just stopped caring." During that time, he was "on a downward spiral" of depression that was so severe that he contemplated suicide.

The Defendant testified that he was not aware of the number of images that he had downloaded but that he had taken "full responsibility for what [he] did." He said he always tried to treat everyone with respect and kindness, never had any intention of hurting anyone, and was sorry for his actions. He reiterated that he had tried to justify his actions to himself by the thought that no one was being hurt, but he now realized that he was "just fooling [him]self."

On cross-examination, the Defendant identified photographs showing a child's bedframe and a children's music CD that had been discovered in his home. He said the bedframe had been left behind by his former girlfriend and speculated that the CD might have been left behind by her as well. He testified that he had not downloaded child pornography when his ex-girlfriend and her child were living with him. He acknowledged he might have told the police that he had been downloading child pornography for a couple of years, but he said that he was very tired when he was being questioned and that it was "probably a couple of months" rather than two years. Upon further questioning, the Defendant initially said that he was not aware of having

downloaded child pornography prior to the time that his ex-girlfriend and her child lived with him but then acknowledged that he had.

The Defendant acknowledged he told the officers that there might be "a couple hundred images" of child pornography on his computers. He said he was not aware of how many images were actually there. He further acknowledged that, by using file sharing sites, the images he downloaded could be uploaded by others from his computer. He testified he thought he "had it set up where nothing could be downloaded" off his computer, but he "guess[ed he] was wrong." Finally, he identified photographs of two additional items found in his apartment, one of which he described as a "sex toy," and the other as a "masturbation device."

Upon questioning by the trial court, the Defendant testified that, at the time of his arrest, he had "[p]robably" been downloading and viewing the child pornography for "closer to a year" than two months. He added, however, that the "time period [was] extremely hazy" and that he could be "off on the years."

The Defendant's father, Troy Shearin, testified that the Defendant had been a good child who never gave him any problems. The Defendant was very smart and always did well in school but was reserved and timid and did not easily make friends. The Defendant became depressed after his divorce and, at one point, confided that he was using drugs. Mr. Shearin believed it was heroin, but the Defendant interrupted his testimony to correct that it was "[c]rack." Mr. Shearin did not understand why the Defendant did what he did and was not sure if the Defendant himself understood. However, he knew that the Defendant was a good person, and he was prepared to support the Defendant in any way he could.

At the conclusion of the hearing, the trial court found that the only possible factor in mitigation was the fact that the Defendant had accepted responsibility and pled guilty to the offense. The court, however, assigned it minimal weight, finding that the Defendant was not credible about how long he had been engaged in the illegal activity and that he was still trying to minimize his actions. The court found two enhancement factors applicable and entitled to, respectively, "great" and "significant" weight: that the Defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish his range, see Tenn. Code Ann. § 40-35-114(1) (2014), and that the Defendant allowed the victims to be treated with exceptional cruelty during the commission of the offense. See id. § 40-35-114(5). The court based its application of the first enhancement factor on the enormous number of child pornographic images in excess of the 100 images required for the offense, although it did also refer elsewhere in its ruling to the Defendant's use of illegal drugs. The court found the exceptional cruelty

enhancement factor applicable because the Defendant was responsible for "spreading [the] poison" by his acts of downloading and viewing the images.

The State proposed as additional enhancement factors that there was more than one victim and that a victim was particularly vulnerable due to age. See id. § 40-35-114(3), (4). While it is not clear whether the trial court specifically found those enhancement factors applicable, it did find that the babies and very young children in the images and videos had "no capability of defending or protecting themselves against somebody raping them[.]" In its lengthy ruling, the court repeatedly expressed its outrage at the crime, referring to the Defendant's behavior as "reprehensible" "monstrous," and "horrifying." The court also expressed its frustration with the Legislature for not providing "greater degrees of punishment" for a person who possesses such an extremely large volume "of images involving rape and exploitation of children." Accordingly, the trial court sentenced the Defendant as a Range I offender to twelve years at 100%, the maximum sentence allowed for a Range I offender convicted of a Class B felony. Pursuant to the sexual exploitation of a minor statute, the court ordered that the sentence be served at 100% release eligibility.

## ANALYSIS

The Defendant contends that the trial court improperly enhanced his sentence by erroneously applying enhancement factors (1) and (5). He argues that the trial court misapplied enhancement factor (1) because "[t]here was no proof that [the Defendant] had any history of criminal behavior aside from the crimes [sic] for which he was being sentenced." He argues that the trial court misapplied enhancement factor (5) because he "did not have any contact, directly or indirectly, with the victims" and because there was no showing of a degree of cruelty "distinct from and appreciably greater than that incident to the crime" as required under State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997), for the application of the exceptional cruelty enhancement factor. The Defendant additionally argues that enhancement factor (3) is inapplicable because our Legislature clearly contemplated that the offense would involve more than one victim by requiring possession of a minimum of 100 images to elevate the crime to a Class B felony. The State responds by arguing, among other things, that the trial court's sentencing comports with the principles of sentencing and should be affirmed. We agree with the State.

Under the 2005 amendments to the Sentencing Act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2014).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701. Moreover, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

We conclude that the trial court did not abuse its discretion by imposing the maximum sentence within the Defendant's range. Given the broad discretion afforded the trial court in sentencing, we find it unnecessary to conduct a detailed analysis of the proposed or applied enhancement factors. We do note, however, that, contrary to the Defendant's assertion, there was proof in the record that the Defendant engaged in criminal behavior, in the form of illegal drug use, in addition to his possession of child

pornography. Even if the trial court erred by its application of the exceptional cruelty enhancement factor, the record reflects that the trial court properly considered the enhancement and mitigating factors and the principles and purposes of sentencing before imposing a sentence within the applicable range for the Defendant's Class B felony. Accordingly, we affirm the sentence imposed by the trial court.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE